## IN RE McCASKEY.

### [No. 10,023.   Filed October 10, 1917.]

1. MASTER AND SERVANT. — *Injuries to Servant.* — *Workmen's Compensation Act.*—*Medical Expenses.*—*Employer's Liability.* —Under §25 of the Workmen's Compensation Act, Acts 1915 p. 392, requiring an employer to furnish a physician for an injured employe only during "the thirty days after an injury," where an employe received no apparent injury at the time of an accident, but after the expiration of the thirty-day period an injury developed from such accident which required medical attention, a physician who was called to render the necessary medical services was entitled to have his claim allowed for services rendered within thirty days after the development of the injury, since under the act the date of the injury and not of the accident fixes the time when the employer's liability for physician's services begins.   p. 351.

2. MASTER AND SERVANT.—*Workmen's Compensation Act.*—*Findings by Industrial Board.*—The Industrial Board's determina-

tion of a question of fact is conclusive on appeal, where there is any evidence to support it.  p. 355.

From the Industrial Board of Indiana.

Certified questions of law.

Proceedings under the Workmen's Compensation Act· in the matter of one McCaskey.  Questions of law certified by the Industrial Board.  *Questions answered.*

HOTTEL, C. J.—The Industrial Board has certified to this court for its decision and determination under §61 of the Workmen's Compensation Act (Acts 1915 p. 392) certain questions of law based on the following facts as certified to by said board:

On February 17, 1916, Lewis Grabhorn, hereinafter referred to as "G," was in the service of the Cotton-Wiebke Company, hereinafter referred to as "the company," as an employe at an average weekly wage of $18, and while in the discharge of his duties in such employment on said day was accidently struck in the forehead with a sledge hammer by one of his coemployes.  Said company is a corporation, and its president and manager was present at the time of and witnessed said accident.  The blow of the hammer made an abrasion on the forehead of G but made no visible physical wound that required medical or surgical treatment.  G continued his work in the belief that he had received no physical injury until and including March 18, 1916, when in the evening, and after the completion of his work on that day, he was taken with a violent pain in his forehead, of which fact his employer was immediately notified.  The pain continued throughout the night and on the following day, March 19, Charles M. McCaskey, a licensed and practicing physician and surgeon of the city of Indianapolis, was called.  Said physician responded to said call, visited G and examined him and, on March 20, diagnosed G's trouble as an ab-

scess in the right frontal sinus, which required a surgical operation in order to open and drain the same. On the same day, March 20, said physician put G under an anesthetic, and drained the right frontal sinus, and continued his treatment for about ten days, when G was so far recovered that he required no further surgical or medical attention. G's said abscess, as conceded by the company, was the direct result of the blow of the sledge hammer received on his head on February 17, 1916. The physician presented a claim for $50 for his services, which the company concedes to be reasonable and proper as against G, considering his standard of living.

Upon these facts we are asked to determine and decide whether, under the act in question, said physician is entitled to have his claim approved by the Industrial Board.

It appears from the brief of said board, accompanying said certified question, that the company, through the insurance carrier, contends that said claim 1. should not be approved for the reason that the services for which it is filed were all rendered more than thirty days after February 17, 1916. In support of its contention, said carrier relies on the provisions of §25 of the act, *supra,* which *requires* an employer to furnish a physician only during "the thirty days after an injury." It will be observed that in the language just quoted the *"injury,"* and not the *accident,* is the thing designated as controlling in determining when the duty to furnish a physician begins and ends, and it will also be observed that throughout said entire act the *injury,* and not the *accident,* is treated not only as the condition upon which liability arises, but its date fixes the date upon which liability begins, and from which the period of its continuance must be ascertained, and the time for giving notices, etc. §§25, 27, 30, 57, 67, *supra.* The use of the word "injury" instead of

"accident" in these various sections of the act is, we think, significant. It comports with the spirit and purpose of the act, in that it makes liability and compensation, and the time of the beginning and ending of each depend on the actual injury, or the result, rather than on the accident, or the cause.

In our examination of this question, we have found no case that supports the contention of the insurance carrier, but, on the contrary, we have found several cases in other jurisdictions, where statutes containing language very similar to that of our act, *supra*, were given the interpretation which we have indicated should be given to our act.

Section 7, Connecticut Acts 1913, ch. 138, p. 1737, provides that: "The employer shall provide a competent physician or surgeon to attend any injured employee during the thirty days immediately following the injury as such injury may require, and in addition shall furnish such medical and surgical aid or hospital service, during such thirty days, as such physician or surgeon shall deem reasonable or necessary. * * *" In the case of *Barton* v. *New York, etc., R. Co.,* 1 Conn. Comp. Dec. 227, this act came up for interpretation before the Connecticut board of compensation commissioners. The facts in that case were in substance as follows: Barton, while at work for the railroad company on February 25, 1913, scratched the palmer surface of his hand on the sharp edge of a stone which he was removing from the railroad company's track. He paid no attention to the scratch, considering it of no consequence. On March 7 or 8, the hand began to pain him, and on the 16th he consulted a physician, who diagnosed his condition as blood poisoning due to the scratch, and sent him to a hospital where he was treated until April 24. He had a bad case of infection, the septic condition extending to his elbow, and he was

compelled to undergo several minor operations, but for which he was in danger of losing his arm, if not his life. The board, following *Johnson's Case* (1914), 217 Mass. 388, 104 N. E. 735, and *Hurle's Case* (1914), Id. 223, 104 N. E. 336, L. R. A. 1916A 279, Ann. Cas. 1915C 919, held that the thirty-day period should be computed from March 16, which was held to have been the date of the injury for the purposes of such computation.

Massachusetts Acts 1911, ch. 751, part 2, §5, provides that: "During the first two weeks after the injury, the association shall furnish reasonable medical and hospital services, and medicines when they are needed." In *Johnson's Case, supra*, the court was asked to construe said statute in a case, the facts of which were in substance as follows: Johnson had suffered from lead poisoning, but had had no recurrence of the disease for fourteen years until he became incapacitated for work on or about March 13, 1913. The board found that he had absorbed lead poisoning since July 1, 1912, and that the date when the accumulated effects of this poisoning manifested itself, and Johnson became sick and unable to work, was the date of the injury. In that case, the court held that under such finding, the board was warranted in finding that the injury was received when he became sick and unable to perform labor. "Until then," said the court, "he had received no 'personal injury,' although doubtless the previous absorption of lead into his system since July 1, 1912, finally produced the conditions which terminated in the injury."

As supporting, or tending to support, the same conclusion, see, also, *In re Hart*, Mich. Indus. Acc. Bd., Bul. No. 3, p. 18; Honnold, Workmen's Compensation 713, §198.

Independently of the cases cited, the interpretation which we have indicated as the one to be given to that part of the Workmen's Compensation Act here involved is in harmony with the entire act, and with the general spirit and purposes, as well as with the economic policy which prompted it.

This court has, in the case of *In re Bowers* (1917), *ante* 128, 116 N. E. 842, said that by the act in question the legislature did not intend "to narrow the rights of an injured employe, but rather that the rights and remedies afforded by the act, while not circumscribed by such limits, should extend to all situations wherein, were there no workmen's compensation act, an injured employe would have his remedy at common law for injuries received, and the act should be so construed where its language reasonably admits of such construction; the general purpose of the act being to substitute its provisions for pre-existing rights and remedies."

Under the facts of this case, G, at common law, in an action for damages for his injures based on negligence, would have been entitled, as one of the elements of his damage, to the expense he incurred for medical and surgical services necessary to the proper treatment of such injuries. By the act involved, the legislature expressly recognizes a portion of such services as a proper element of compensation to an injured employe. The language of the statute, and justice and reason alike, authorize the conclusion that the services of an attending physician for which compensation was intended was a service to be rendered after there was an actual known physical injury, and hence where, as in this case, the undisputed facts show an accident to an employe in the presence of his employer, the immediate effects of which are not such as to indicate to either employer, or employe, any disability within the

In re McCaskey—65 Ind. App. 349.

meaning of the act in question or any injury requiring the services of an attending physician as provided in said act, and such physician is, at the time, neither asked for nor called by the employe, nor furnished by the employer, and it turns out later that the injury resulting from such accident is more serious than was at first thought, and is in fact such as results in a disability of the employe within the meaning of the statute here involved, the thirty-day period during which the employer must, under said §25, of this act, *supra*, furnish an attending physician begins to run when the disability to the employe within the meaning of the act in question develops from such injury.

It follows that under the facts certified to us by the Industrial Board, such board is, by the act in question, given authority to approve said physician's claim, and, assuming that the facts above indicated are undisputed, this court would say as a matter of law that said claim should be allowed. However, the question of when an injury occurred, like any other question of influence in determining whether a claim should be allowed by the Industrial Board, is, ordinarily, a question of fact to be determined by such board from all the evidence before it, and its determination thereof, where it has any evidence for its support, will be conclusive on this court.

NOTE.—Reported in 117 N. E. 268. Workmen's Compensation Act: review of facts on appeal, see note *ante* 347; allowances for medical services to injured employe under act, L. R. A. 1917D 178.