## MILLSPAUGH & IRISH COMPANY v. LUNTE.

[No. 11,884. Filed June 4, 1924. Rehearing denied November 12, 1924.]

1. MASTER AND SERVANT.—*Under §25 of the Workmen's Compensation Act, Industrial Board may, order medical treatment for additional thirty, days.*—Under the provisions of §25 of the Workmen's Compensation Act (Acts 1919 p. 158, §8020i1 Burns' Supp. 1921), where the uncontroverted evidence concerning the nature and prognosis of the injury showed a femoral hernia, the Industrial Board was warranted in allowing the injured employee medical treatment for an additional period not exceeding thirty days. p. 148.

2. MASTER AND SERVANT.—*Under Workmen's Compensation Act, period of treatment begins to run at once where nature of injury is readily ascertainable.*—If the nature of an injury is such that it is visible and open to observation or readily, ascertainable by a surgeon at the time it occurred, the thirty-day period during which the injured employee is entitled to medical treatment begins to run at once. p. 149.

3. MASTER AND SERVANT.—*Under Workmen's Compensation Act, period of medical treatment begins to run when employment as cause of injury is ascertained.*—If the nature of an injury is such that it cannot be diagnosed with reasonable certainty at once, the thirty-day period during which the injured employee is entitled to medical treatment does not begin to run until it is possible to establish by legal proof that his injuries were due to his employment. p. 149.

4. MASTER AND SERVANT.—*Under Workmen's Compensation Act, medical treatment enforceable when injury reliably diagnosed.*—The legal rights of an injured employee to medical treatment, and the corresponding duties of the employer become enforceable under the Workmen's Compensation Act (Acts 1915 p. 392, §80201 *et seq.* Burns' Supp. 1921), when the injury has developed so that it may be diagnosed with reasonable certainty. p. 150.

5. MASTER AND SERVANT.—*Under Workmen's Compensation Act, right to medical treatment enforceable from discovery of nature and date of injury.*—Under the Workmen's Compensation Act (Acts 1915 p. 392, §80201 Burns' Supp. 1921), the right

of an injured employee to medical treatment for a femoral hernia, which was not discovered for two months after the date of injury, did not begin until the date and the nature of the injury, was determined. p. 150.

6. MASTER AND SERVANT.—*Under Workmen's Compensation Act, award of compensation held unauthorized and should be modified.*—An award for compensation to continue "so long as the plaintiff is totally disabled to perform the work in which he was engaged at the time of his injury" exceeded the authority of the Industrial Board and should be modified by substituting in lieu thereof "during total disability." p. 151.

From Industrial Board of Indiana.

Proceedings for compensation under the Workmen's Compensation Act by Edward F. Lunte against Millspaugh and Irish Company. From an award for applicant, the defendant appeals. *Award modified and affirmed as modified.*

*James W. Fesler, Harvey J. Elam, Howard S. Young* and *Irving M. Fauvre,* for appellant.

*Joseph Collier,* for appellee.

In this proceeding the Industrial Board made the following finding of facts:

"That on May 14, 1923, the plaintiff was in the employment of the defendant at an average weekly wage of $22; that on said date he received a personal injury by accident arising out of and in the course of his employment, of which the defendant had knowledge; that his injury consisted of a right femoral hernia; that his injury could not be definitely diagnosed until July 12, 1923, at which time he was taken to a hospital where on the following day he was operated on for the injury; that he incurred a hospital bill of $45.15 in the treatment of the injury, which he has paid; that his injury totally disabled him from work, beginning with May 15, 1923; and that on the date of the original hearing he was still disabled to perform the work in which he was engaged at the time of his injury."

On the foregoing facts compensation was awarded. The following is so much of the award as is necessary to an understanding of the questions to be determined in this appeal:

"That the plaintiff be and is hereby awarded against the defendant, compensation at the rate of $12.10 per week, beginning on May 22, 1923, and continuing so long as the plaintiff is totally disabled to perform the work in which he was engaged at the time of his injury, provided however that the total compensation shall in no event exceed $5,000 as to amount or 500 weeks as to time.

"It is further ordered that the defendant pay the medical, surgical and hospital services required by the plaintiff's injury.

"It is further ordered that the defendant reimburse the plaintiff in the sum of $45.15, which the plaintiff paid out in the treatment of his injury."

The award was made November 1, 1923.

The appellant presents for our determination the following questions: (1) Did the Industrial Board have power to order the employer to pay for medical, surgical and hospital service rendered after the first thirty days from the injury? (2) Did the Industrial Board have authority to order that compensation should continue so long as plaintiff is disabled to perform the work in which he was engaged at the time of his injury?

It is necessary to a full understanding of the case that the following undisputed evidence be taken into consideration:

The injured workman testified: "About 3:30 in the afternoon while I was pulling up heavy lumber, I got a pain in my bowels. It nearly doubled me up. I straightened out in a little bit, but it kind of got me

for the time. I could hardly get home. By the time I got home I had a big knot swelling up. I called a physician, Dr. Spencer, the same evening. The next morning I remained in bed and could not go to work. I have not been back to work since."

Dr. Spencer testified: "Mr. Lunte came to see me about a small swelling in the groin. I examined him and there was no tenderness there. I did not know whether it was a gland or a hernia. I said to him that the thing to do is to wait and see if you have any suppuration. He was complaining then of sick stomach and pain through the bowels. After a few days he began to develop a fever and a swelling. The small knot in the groin began to get red and sore. I said that I think you will have to go to bed; I believe you have a suppurating gland. In about a week this developed into a suppurating abscess. I called in Dr. Conley and gave this man an anesthetic. I opened the abscess and packed it with gauze, and in about four days the fever subsided and I let him up. He complained of a lot of pain through the abdomen, which I could hardly account for. After the pus quit coming out of the wound, the abscess kept up a discharge like from the bowels. In the meantime I had Dr. Reed to see him and I think he was sent to Dr. Oliver. They thought he had a suppurating gland. It kept on discharging and I finally called in Dr. MacAlexander and I told him that I believed the man has some bowel down in this femoral ring and that the thing to do is to find out if it is so. We hit upon the idea of giving menthol blue to see if it would come through the bowel and through the opening; and it did. I went up to the insurance company and told them he had a femoral hernia. They suggested going to Dr. Reed; but he was out of town, and so suggested sending him to Dr. Oliver, which we did. They didn't do anything more and we

waited three or four days. Of course the man had to have attention and we took him to the hospital. Dr. MacAlexander and I cut in there and found the bowel pinched. It was pinched in the ring; so we had to dissect that and sew the bowel up. There was a condition that is quite hard to find. You would not find one of these cases in a thousand. Instead of being inguinal it was femoral. If it had been an inguinal hernia, there would have been no question about it; but a femoral hernia, which occurs rarely, just having that much bowel down, was fooling everybody."

Dr. MacAlexander testified: "I examined Mr. Lunte. I found a swelling and induration on the right side which was discharging. After carefully examining, I gave it as my opinion that he had a strangulated hernia and that the discharge which was coming through the opening was bowel contents. Dr. Spencer raised the question that it probably could not be bowel contents because of the fact it had no odor. I reminded him that there is no odor from the contents of the small bowel, and that it is only from the large bowel there is odor. We gave him three capsules of menthol blue and the next morning it came through, showing that there was a hole in the bowel. I saw him in the hospital on the 12th and on the following day I did an abdominal operation. I found a coil of small intestine caught in the femoral ring. About one-fourth of the circumference of the intestine had been destroyed. I could introduce my index finger into the hole. We released the bowel from the hernial tract, closed the bowel, introduced a drainage tube through the original sinus opening, and closed him up. He stayed in the hospital ten days, if I remember correctly, and then went home. Of course he could not go to work for a few weeks after such an experience as that; because he was a sick man. For four or five weeks before he was operated, of course,

he was a sick man. I should think that in three or four months after the operation he ought to be back at work. That would be my judgment. It would depend on the character of the work. If it was very heavy work, he might not be able to resume the work he formerly did. If that work was lifting heavy pieces of timber and auto bodies weighing 600 or 1,000 pounds, the boards weighing 100 to 200 pounds, it would be hazardous to do that kind of work in three months. But if he is ever going to be well, it ought to be in four months. But I could not say as to that until I had made an examination of the man's body."

It was stipulated by counsel that the insurance carrier had denied liability.

DAUSMAN, P. J.—The provision of the compensation law, as originally enacted, concerning the duty of an employer to furnish treatment to an injured employee during the first thirty days after the injury, is familiar. §25, Acts 1915 p. 392, §8020i1 Burns' Supp. 1918. By an amendment to that section the following has been inserted:

"If, by reason of the nature of the injury or the process of recovery, treatment is necessary for a longer period than thirty days, the Industrial Board may require the employer to furnish such treatment for an additional period, not exceeding thirty days." §25, Acts 1919 p. 158, §8020i1 Burns' Supp. 1921.

The compensation law gives recognition to the principle that it is to the interest of everyone concerned (including the public) that a disabled workman

1.   shall be restored, if possible, without unnecessary delay, so that he may engage in some wholesome and profitable employment whereby he may provide for himself and his dependents. To that end, the law as originally enacted imposed upon an employer the absolute duty to furnish to an injured em-

ployee such medical and surgical treatment and hospital service as may be necessary during the first thirty days. The amendment confers upon the Industrial Board the power to require an employer to furnish treatment for an additional period not exceeding thirty days if in the judgment of the board a recovery probably will be accelerated thereby. The board has made no finding on this feature, but from the uncontroverted evidence concerning the nature and prognosis of the injury it is apparent that the board has not abused its discretion by giving Lunte the benefit of the additional thirty-day period, if in fact the board has exercised that discretion.

The employer contends that the law contemplates that the Industrial Board shall determine in advance whether or not it will require an employer to furnish treatment beyond the first thirty-day period; and that the board had no authority to include in the award the cost of the hospital service for the reason that the service was rendered after the first thirty-day period and no order requiring the employer to furnish that service had previously been made. The contention rests on the assumption that the hospital service was in truth furnished after the first thirty-day period. Is the assumption valid?

If Lunte had been injured by some external and violent means—some mishap in his environment—and if the nature of his injury had been such as that it was visible and open to observation or readily ascertainable by a surgeon at the time it occurred, then there would have been no difficulty in determining the right of the employee and the duty of the employer with respect to medical and surgical treatment. In that class of cases the treatment period begins at the time the injury is inflicted. But Lunte's injury was not one of that class. While engaged in

heavy lifting he suddenly experienced severe pain in his abdomen. He thought the pain was in his bowels. That evening he made his way home with difficulty. He consulted a physician. The physician found a swelling, but was unable to determine the precise nature of the ailment. He was inclined to the opinion that his patient was suffering from a swollen gland. After some days, suppuration appeared; and the physician thought he was dealing with a suppurating gland. At that time and on that state of facts no one could know the right of the employee and the duty of the employer with respect to treatment. If the employer had furnished treatment during the first thirty days and afterward it had developed that Lunte's ailment was in no sense due to his employment, then the employer would have incurred an expense which the law did not require him to incur. The truth is that from the day on which the injury occurred until the nature thereof could be ascertained with reasonable certainty, was a period of suspense. During that period, the right of the employee and the duty of the employer with respect to treatment were suspended. In other words, during that period, it would have been impossible to have determined the question of right and duty for the simple reason that legal proof could not have been adduced. Finally, on July 12, by a decisive test, the surgeons established beyond controversy that Lunte's ailment was a femoral hernia. That fact having been established, it then became possible to establish by legal proof that his injury was due to his employment. Thereupon, it became the duty of the employer to furnish treatment. Then, and not until then, did the treatment period begin.

The facts of this case illustrate the wisdom of the rule that the legal rights of the employee and the corresponding duties of the employer become enforceable when the injury has developed so

4, 5.

that it may be diagnosed with reasonable certainty, thus making it possible to establish the facts on which those rights and duties depend, by that degree of proof required by law. *John A. Schumaker Co.* v. *Kendrew* (1918), 68 Ind. App. 466, 120 N. E. 722. See *Hornbrook-Price Co.* v. *Stewart* (1918), 66 Ind. App. 400; *In re McCaskey* (1917), 65 Ind. App. 349, 117 N. E. 268; *Johansen* v. *Union Stock, etc., Co.* (1916), 99 Nebr. 328, 156 N. W. 511; *Johnson's Case* (1914), 217 Mass. 388, 104 N. E. 735. It follows that the hospital expense was incurred during the first thirty-day period and that the employer's liability for the payment thereof . is absolute.

By specifying in the award that compensation shall continue "so long as the plaintiff is totally disabled to perform the work in which he was engaged at the time of his injury," the Industrial Board 6. exceeded its authority. That proposition is so clear that it is not debatable. But we would not be justified in reversing the award as a whole on that account. If Lunte becomes able to engage in remunerative employment of any kind, even though it be not the identical work in which he was engaged at the time of his injury, that fact may be presented to the board by a proper petition, and, on proof thereof, it would be the duty of the board to modify the award accordingly. The rights of the employer cannot be forestalled by inserting the objectionable provision in the award. However, we deem it advisable that the award should be amended by expunging the words above quoted and inserting in lieu thereof the words "during total disability."

The Industrial Board is directed to make the amendment above indicated; and, when so amended, the award is affirmed.