MARVIN *v.* BIKE WEBB MANUFACTURING COMPANY ET AL.

[No. 17,191. Filed January 11, 1944.]

*Jones, Obenchain & Butler* and *Richard C. Kaczmarek,* all of South Bend, for appellant. ·

*Henry L. Humrichouser,* of South Bend, for appellees.

CRUMPACKER, C. J.—On the 27th day of December, 1941, the appellant suffered an accident arising out of and in the course of her employment by the appellee, and as the result thereof became

temporarily totally disabled on the 16th day of November, 1942. Upon application and hearing, the Industrial Board of Indiana awarded her compensation at the rate of $11.51 per week, to continue during the period of such total disability, or until terminated in accordance with the provisions of the Indiana Workmen's Compensation Act. This award is based on a finding by said board that for the 52 weeks immediately preceding December 27, 1941, the date of the accident, her average weekly wages were $20.92. The appellant contends that the amount of such weekly compensation should have been computed on the basis of her earnings for the 52 weeks immediately prior to the date she became totally disabled; to-wit, November 16, 1942, and that upon such basis of computation the undisputed evidence discloses her average weekly wages to have been $22.48, thus entitling her to compensation at the rate of $13.46 per week instead of $11.51, as awarded by the Industrial Board. For this reason she asserts said award is not supported by the evidence and is contrary to law.

The solution of the question presented turns upon the construction of the first sentence of § 73 (c) of the Indiana Workmen's Compensation Act of 1929, as amended, § 40-1701 (c), Burns' 1940 Replacement, § 16449 (c), Baldwin's 1934, which reads as follows:

" 'Average weekly wages' shall mean the earnings of the injured employee in the employment in which he was working at the time of the injury during the period of fifty-two [52] weeks immediately preceding the date of injury, divided by fifty-two [52]; but if the injured employee lost seven [7] or more calendar days during such period, although not in the same week, then the earnings for the remainder of such fifty-two [52] weeks shall be divided by the number of weeks and

parts thereof remaining after the time so lost has been deducted."

In the sense that the words "accident" and "injury" are ordinarily used, they are not synonymous. It is apparent that an accident can happen without the concurrent accompaniment of a compensable injury. Therefore, says the appellant, had the Legislature, in defining the period over which average weekly wages should be computed, meant the 52 weeks immediately preceding the accident, it would have said so by the use of the word "accident" and not the word "injury." There is much to be said for this argument, particularly where disability entitling the employee to wage compensation does not develop until months after the accident which caused it. After all, the wages such an employee is going to lose, by reason of his disability, are the wages he could reasonably have been expected to have earned had the disability not occurred. This, of course, is necessarily conjectural and speculative to some degree, but it is reasonable to presume that such wages would average about the same for the period of disability as they had averaged for a reasonable period immediately prior thereto. Why then should the average weekly wage be computed over a 52-week period immediately preceding the date of the accident which may have happened months prior to the resulting disability? On the other hand, it is apparent that an accident which is proximately followed by disability must necessarily, and simultaneously therewith, have caused what we ordinarily term an injury to some bone, tissue, cell or other structure of the human anatomy, which injury is not then compensable, but from which disability eventually results. In this sense, the words "accident" and "injury" can be said to be synonymous, and, if so used in the section of the Workmen's Com-

pensation Act we are now considering, the appellant's average weekly wages were correctly computed.

Over a period of years, it has been the unchanging view of this court that a cause of action for weekly compensation does not accrue at the time of the accident unless the disablement or compensable injury occurred simultaneously therewith. *S. G. Taylor Chain Co.* v. *Marianowski* (1932), 95 Ind. App. 120, 182 N. E. 584; *Muehlhausen Spring Co.* v. *Szewczyk* (1937), 104 Ind. App. 161, 8 N. E. (2d) 104; *Miles Laboratories* v. *Jenks* (1939), 106 Ind. App. 491, 20 N. E. (2d) 710. The above decisions, and many others in this and other jurisdictions where there are similar statutes, all hold that the word "injury" as used in § 40-1224, Burns' 1940 Replacement, § 16440, Baldwin's 1934, pertaining to the limitation for filing claims for weekly compensation, means compensable injury. This construction is predicated upon the reasoning that an injury does not become compensable until a disability, as defined by the act, results from the accident, and therefore no cause of action accrues until such disability occurs. Hence, it would be unjust and illogical to start the running of the statute of limitations from the date of the accident when any action commenced before the occurrence of a compensable injury would be premature and could not be maintained.

Section 25 of the act, as amended, provides that "During the first ninety [90] days after an injury the employer shall furnish or cause to be furnished, free of charge to the injured employee, an attending physician, for the treatment of his injuries, . . .", § 40-1225 Burns' 1940 Replacement, § 16401, Baldwin's 1934. On the theory that an injury is compensable if the services of a physician are indicated, even though no disability

justifying an award of weekly wage compensation results therefrom, this court has held that the "first ninety [90] days after an injury" is the ninety day period immediately following the date the services of a physician are first required, and not the ninety days immediately succeeding the accident or the 90 days immediately following the date of disability, if disability eventually results. *Farmers Mut. Liability Co.* v. *Chaplin* (1943), Ind. App., 51 N. E. (2d) 378; *In Re McCaskey* (1917), 65 Ind. App. 349, 117 N. E. 268; *John A. Schumaker Co.* v. *Kendrew* (1918), 68 Ind. App. 466, 120 N. E. 722; *Millspaugh & Irish Company* v. *Lunte* (1924), 82 Ind. App. 143, 144 N. E. 147.

The appellant insists that the word "injury," as used throughout the act, must be given a uniform meaning and that this court having construed it to mean compensable injury, as used in §§ 24 and 25, *supra,* cannot consistently say that, as used in § 73 (c), *supra,* it is synonomous with the word "accident." We cannot agree that such conclusion necessarily follows. The same word may be used in various sections of an act and its meaning as used in each of them may vary with the context, or it may be necessary to ascribe to such word a particular meaning in order to effectuate the plain legislative intent as expressed in the section of the act under construction. It will be noted that in each instance where this and other courts have construed the word "injury" as meaning "compensable injury" it has been in connection with the question of the limitation of actions to enforce remedies. The rule announced in such cases is one of necessity because statutes of limitation do not begin to run until the particular cause of action involved accrues and under the provisions of the Workmen's Compensation Act

such action may not accrue until months after the date of the accident and its concurrent incipient injury.

No such rule of necessity impels a similar construction of the word as used in § 73 (c) of the act. As heretofore stated any accident that results in a compensable injury must necessarily have been accompanied by an injury of some degree, as otherwise subsequent disability or the necessity for medical care and hospitalization could not be said to be the proximate result of the accident, and it may very well have been this incipient injury, not yet compensable but concurrent with the accident, that the Legislature had in mind in specifying the period over which average weekly wages should be computed. A careful study of the section involved inclines us to this view. It must be borne in mind that such section provides that "average weekly wages shall mean the earnings of the injured employee *in the employment in which he was working at the time of the injury* during the period of fifty-two [52] weeks immediately preceding the date of the injury" (emphasis supplied). If we say that the phrases "at the time of the injury" and the "date of the injury," as so used, mean the time or date of compensability it necessarily follows that a person who has left the employment, in the course of which the accident occurred, and is unemployed when his injury becomes compensable, is without a remedy as there is no basis upon which his average weekly wages can be determined. No provision is made for such a contingency and any attempt to construe the act with a degree of liberality as will cover such a situation would necessarily require reading into the law something that is not there, thus sanctioning the intolerable and unsound practice of construing a word or phrase in

a lone section of the act differently as applied to different facts.

It is also entirely plausible, in a case where there is a considerable time lag between the accident and the compensable injury, that in such interim an employee may have left the employment out of which the accident arose and entered the services of another where he is engaged in work of a different class and character, commanding higher or lower wages, when his injury becomes compensable. It is apparent, under such circumstances, that the 52 weeks immediately preceding the date of the compensable injury, if used as a basis for the computation of average weekly wages, would require the first employer to pay compensation determined by the wages paid by someone else for a different class of work. Such a contingency is clearly beyond the contemplation of this section of the act as its terminology throughout indicates that the Legislature had in mind compensation based on the same grade of work, in the performance of which an employee was injured, as paid for by the employer in whose employment the accident occurred.

It is true that in the present case we are confronted with no such situation as we have above described and that, as applied to the facts here involved, the construction the appellant seeks can be entertained with reason and logic, but we are compelled to adopt that construction, equally reasonable and equally logical, as will effectuate, under all circumstances, the plain intention of the Legislature to compensate every injury it thought should be compensated. By holding that the terms "the time of the injury" and "the date of the injury" mean the time and date of the incipient injury occurring simultaneously with the accident, we believe § 73 (c) of the act

will be applicable to any contingency that may arise and we therefore so hold.

We are advised that for many years the Industrial Board and the bar have so construed this section of the act without legislative correction or interference and while that fact is by no means conclusive it is to some extent persuasive.

Affirmed without statutory increase.

NOTE.—Reported in 52 N. E. (2d) 360.