Hillsborough, Dec. 2, 1952. } No. 4159.

ALBERT L. DESROSIERS

*v.*

DIONNE BROS. FURNITURE, INC. & a.

*Charles J. Flynn* and *Robert E. Earley* (*Mr. Flynn* orally), for the plaintiff.

*Alvin A. Lucier* (by brief and orally), for the defendant.

GOODNOW, J. Section 19 of the Workmen's Compensation Act (Laws 1947, *c.* 266) provides in part that "during the first ninety days after an injury to an employee, an employer . . . shall furnish to an injured employee . . . reasonable medical and hospital services." The question raised by the plaintiff in connection with this section is whether the date of commencement of the ninety day period, described as following "after an injury," is the date when the injury occurs or the date it has become apparent and requires medical or hospital treatment. The plaintiff, in support of the latter view, relies chiefly upon the case of *Millspaugh & Irish Co.* v. *Lunte*, 82 Ind. App. 143, and other cases from that state in which the Indiana statute is construed.

In determining the commencement of the period in question, we are required to interpret the compensation statute of our own state. Section 2 of the statute provides, in part, in paragraph III that the word "injury" as used in the statute shall mean "accidental injury . . . arising out of and in the course of the employment." An examination of the entire statute discloses that periods limited in time in reference to the "injury" appear in several sections (*ss.* 12, 18, 19, 28, 43) while "the accident" appears as a determining time factor in only section 14. The plaintiff argues that because the time of "the accident" is used as the starting point of the period within which the injured employee is required to give notice of a claim under section 14, as distinct from the "injury" as the beginning of the period during which medical and hospital services are to be furnished under section 19, it is to be assumed that the Legislature intended the "injury" to designate a time of commencement different from "the accident." The use of the word "accident" in section 14 must be read in its context. "No proceedings for compensation . . . shall be maintained unless notice of the accident . . . has been given to the employer as soon as practicable after the happening thereof . . . and within six months from the occurrence of the accident." The word "accident" was used in defining

the time limit simply because the earlier portion of the sentence referred to "notice of the accident" and not in order to distinguish the date for the commencement of the period for giving notice from the date for the beginning of the various periods provided in other sections, including section 19, where the word "injury" is used. When an injury results from an accident, as it must in order to come within the compensation statute, the injury must occur at the time of the accident even though it is not then apparent or else the accident did not cause it. From the words of the statute we can only conclude that the ninety day period described in section 19 commences at the time the injury is received, which is at the time of the accident.

We have been urged by the plaintiff, in the interest of a liberal construction of the statute, to adopt the view that the ninety day period "after an injury" commences when an injury has become apparent and requires medical or hospital treatment. In support of this, the plaintiff points out that until the nature of the injury can be diagnosed and its connection with the accident determined, there should be a period of suspense since neither the employer nor the employee knows whether there is a duty on the employer to furnish medical care until it is determined that the injury is a compensable one and that to start the period of ninety days at the time of the accident deprives the employee of the medical and hospital benefits of the act in those cases where the injury does not become apparent or subject to final diagnosis within the ninety day period.

In this argument, the plaintiff has overlooked the effect of the extension provision of section 19. This provides that "such ninety day period may be extended from time to time at the discretion of the commissioner of labor." Such extensions for prospective benefits may be granted by the Commissioner either within or after the expiration of the original ninety day period. *Carbonneau* v. *Company,* 97 N. H. 438. Provision for remedial care "was doubtless intended to preserve to the employee the benefit of compensation without substantial reduction for medical or hospital expense. The provision for extension of the . . . period . . . was calculated to further this purpose in appropriate cases." *Id.,* 441. By this provision, an employee whose need for medical care first arises after ninety days from receiving the injury may be entitled to the same benefits accorded to those requiring immediate treatment. Were the plaintiff's view to be adopted, it would mean that during the

uncertain period which might exist between the accident and the diagnosis of the injury which would make it apparent, a period when medical and hospital services might well be required, the employee would not have the benefit of the services provided by section 19.

"We are here concerned with construction of remedial legislation in the light of its recognized purpose to afford to the employee 'a certain and sure remedy applicable to all cases of injury not due to his wilful misconduct.'" *Bolduc* v. *Company,* 97 N. H. 360, 365. To provide such a remedy, it is important that when an employee is injured by accident under the circumstances of the statute, he should immediately be entitled to any required medical and hospital services. If he continues to need such services beyond the original ninety day period, he may apply for an extension of the period. On the other hand, if his ailments do not need such services immediately after the accident, or if, after requiring immediate attention, they subside and later develop such a need, the employee may apply for an extension of the ninety day period at any time. *Carbonneau* v. *Company, supra.*

Applied to the facts of the case now before us, the plaintiff received remedial benefits on account of the accident for an undisclosed period immediately following its occurrence and might have secured further benefits at the time of his operation had he seasonably applied for an extension of the benefit period. Under the plaintiff's view, the expense of all medical services furnished between the date of the accident and the final diagnosis two years later should have been the obligation of the employee and not recoverable from the employer. "It would be an extraordinary interpretation which would so narrowly construe a law, which it is universally conceded ought to be liberally construed, as to deprive" an employee of some of its benefits. *Courage* v. *Carleton,* 96 N. H. 348, 349.

The cases relied upon by the plaintiff arose under a statute which did not provide for an extension of the period for remedial benefits and are distinguishable on that ground.

The plaintiff also relied at the trial upon a claim of estoppel as against the insurance carrier in order to recover the amount of the bills for medical and hospital expenses incurred by him at the time of his operation for removal of the disc and spinal fusion. Both the plaintiff and the insurance carrier's agent testified, in contradiction of each other, about the conversations between them.

This testimony concerned promises and assurances concerning payment of the bills claimed by the plaintiff to have been made by the agent. The Court in its findings recites the plaintiff's claim of an agreement and the agent's denial of it and in conclusion "finds no such agreement was made and rules no estoppel exists." The plaintiff takes this language as a ruling that "no estoppel existed, because no such agreement was made," and excepts to the ruling as not supported by the law. It is plain to us on the entire finding of the Court on this question that the word "agreement" was used by the Court in reference to the promises and assurances concerning which the plaintiff had testified. On the conflicting testimony, the Court found, on sufficient evidence, that no such promises or assurances were made by the agent and therefore there was no estoppel. The law was properly applied so far as the record indicates and the plaintiff's exception is without merit.

The remaining question before us involves the Court's denial of the plaintiff's claim for compensation for partial disability. The findings indicate that at the time of the accident, the plaintiff's average weekly pay was $40, that when he entered the hospital over two years later it was $46, that when he returned to work after the operation it was $50 and at the time of hearing it was $52. The Court further found in effect that while the plaintiff had a limitation of motion in his back which would prevent him from following the occupation he was learning at the time of the accident, he had not suffered any partial disability and there was "no evidence from which it can be found that his earning capacity has been impaired." From the fact that the plaintiff had a limitation of motion in his back, it does not follow that he is entitled to compensation for partial disability but the Court's further finding that evidence of impairment of earning capacity is completely lacking is so inconsistent with the finding of limitation of motion that it is evident that the law was not correctly applied.

It is well settled that compensation is awarded in accordance with the extent of loss of earning capacity. *Freeman .v. Pacific Mills*, 84 N. H. 383, 385. Partial disability is determined on the basis of whether there has been an impairment of earning capacity by reason of the injury. It is not what he actually earns after the accident but his ability to earn after the accident that should be considered in measuring the value of an employee's then working capacity and thereby determining whether it has or has not been

lessened. Laws 1947, c. 266, s. 23. *Bolduc* v. *Company*, 97 N. H. 360, 368; *Gagne* v. *Company*, 87 N. H. 163, 166. "Actual wages earned after injury are but one of the evidentiary facts to be considered with such others as may be material in arriving at the operative fact of loss of earning capacity." *Peak* v. *Company*, 87 N. H. 350, 352. When an injured employee returns to work at the same or larger wage, it does not follow as a matter of law that he is entitled to no compensation. *Carignan* v. *Company*, 95 N. H. 333, 336.

There was evidence that but for the accident, the plaintiff would have been earning considerably more on his old job than he actually was earning on the new job, that the latter was not a normal or permanent position but one which was being kept open for him "until this thing is settled," that he has a limitation of movement in his back and that he can never do work involving heavy lifting or extreme stretching or bending over. The Trial Court was not required to accept these facts as true but "a determination of earning capacity requires the weighing of conflicting testimony, and, within the limits established by the statute, the exercise of judicial discretion." *Peak* v. *Company*, 87 N. H. 350, 353. In view of the ruling that there is no evidence of impairment of earning capacity it is apparent that the Court did not exercise this discretion in reaching his decision that the plaintiff was not entitled to any compensation for partial disability. The finding in that respect must be set aside.

In view of the decision in *Carbonneau* v. *Company*, 97 N. H. 438, it is unnecessary to consider the plaintiff's exception to the ruling of the Court concerning the statutory authority of the Commissioner of Labor in extending the period for remedial benefits.

There must be a new trial on the claim for partial disability. In all other respects, the plaintiff's exceptions are overruled and the award is sustained.

*New trial.*

All concurred.